IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LORI R. SHARP AND REX A. SHARP,

    Plaintiffs,

v.                                      Case No. 12-2498-SAC

WELLMARK, INC. D/B/A WELLMARK
BLUE CROSS & BLUE SHIELD OF IOWA,

    Defendant.

MEMORANDUM & ORDER

Plaintiffs filed an amended petition in state court against defendant seeking to recover unpaid benefit amounts and interest after the parties settled plaintiffs' prior ERISA lawsuit. Defendant Wellmark, Inc. removed the case to this court, invoking the court's original jurisdiction over actions brought by participants or beneficiaries seeking remedies under employee welfare benefit plans pursuant to 29 U.S.C. § 1132(e), the Employee Retirement and Income Security Act (ERISA). This matter comes before the court on plaintiffs' motion to remand. As explained below, the motion is denied.

**I. Procedural Background**

    **First ERISA Case Settles**

In May 2008, plaintiffs filed an ERISA lawsuit in federal court seeking to recover the costs of certain prescription medication under an employee

welfare benefit plan that was sponsored and maintained by plaintiff Rex Sharp's employer. Wellmark insured the plan benefits pursuant to a Group Insurance Policy issued to Sharp's employer. In 2009, the parties reached a settlement and compromise of plaintiffs' ERISA lawsuit. Plaintiffs agreed to dismiss with prejudice their lawsuit against Wellmark and released Wellmark from all claims of damages or expenses, provided that Wellmark would pay the benefit claims if an independent medical reviewer determined they were covered by the Plan. Thereafter, an independent reviewer determined that plaintiffs' claims were covered by the Plan, and Wellmark paid benefit amounts to plaintiffs.

**Second Lawsuit is Filed in State Court, Removed, and Transferred**

In paying benefit amounts, Wellmark subtracted $11,588.88 in deductibles and co-pays that it believed plaintiffs were responsible for pursuant to the terms of Plan. In contrast, plaintiffs believe Wellmark is responsible to pay that amount pursuant to the parties' settlement agreement. Plaintiffs also contend that Wellmark failed to pay interest on the principal amount of the wrongfully denied claims. So in July of 2010, plaintiffs filed a second lawsuit against Wellmark seeking interest on the benefit amounts paid by Wellmark to plaintiffs, but made no mention of the deductible and co-pay amounts. Plaintiffs' suit, filed in Johnson County, Kansas, asserted claims for breach of contract, unjust enrichment and accounting. Wellmark removed the case to federal court on the basis of

complete preemption under ERISA. This Court denied plaintiffs' motion to remand, concluding that plaintiffs' claim for interest was "tied to the payment of ERISA benefits" and fell within the scope of ERISA's civil enforcement provisions. *Sharp v. Wellmark, Inc.*, 744 F. Supp. 2d 1191, 1197-99 (D. Kan. 2010).

This Court transferred the case to the United States District Court for the District of Iowa where it was consolidated with a pending declaratory judgment action which Wellmark had filed regarding interest allegedly owed to plaintiffs under the terms of the Plan. The District Court of Iowa sua sponte raised the question of its subject matter jurisdiction, ordered briefing of the issue, held a hearing, and took testimony from Mr. Sharp concerning the nature of plaintiffs' claims against Wellmark. The district court ultimately concluded that subject matter jurisdiction was lacking because plaintiffs' petition, according to Mr. Sharp's testimony at the hearing, sought only to enforce the parties' private settlement agreement. Concluding that plaintiffs "are asserting a right to recover interest based upon the Settlement Agreement and not upon any ERISA civil enforcement provision," the Iowa court remanded the case to the Kansas state court.

**Case is Remanded to State Court, Amended, and Removed Again**

In state court, the parties filed cross-motions for summary judgment. Wellmark asserted that plaintiffs' claim for interest was completely offset by an overpayment of $6,325.78 Wellmark had made to plaintiffs. Plaintiffs

3

then moved to amend their petition to add a claim for the coinsurance and deductible amounts of the benefits payment that Wellmark had withheld. Wellmark opposed the motion to amend on the grounds of unfair prejudice, timeliness and futility.

Judge Elliott held a hearing on the motions for summary judgment and to amend the petition. Ultimately, Judge Elliott denied both motions for summary judgment and granted plaintiffs leave to file an amended petition. At oral argument on those motions, Judge Elliott expressed concern that plaintiffs were allegedly attempting to recover interest under the settlement agreement despite the fact that the agreement did not provide for the payment of interest. Judge Elliott suggested that plaintiffs' case was not an action for breach of the settlement agreement, but for interest payments as creditors. Plaintiffs' counsel agreed with Judge Elliott that plaintiffs were "entitled to interest as creditors." Expressing its belief that the creditor theory of recovery was "different than what's pleaded at this point," counsel for Wellmark noted that plaintiffs could file an amended petition articulating the creditor theory. Judge Elliott agreed with counsel's suggested approach. Counsel for Wellmark then cautioned that if that happened, his client might remove the case since plaintiffs are creditors, if at all, only as a result of the claim denial under the ERISA Plan.

Plaintiffs filed their amended petition in July of 2012, asserting that they "bring no claim under ERISA" and that their claims "arise under the

Agreement and state law." The amended petition contains four counts: 1) breach of contract, based on Wellmark's asserted failure to pay prejudgment interest "as required by law" and paying less than the full principal amount by withholding copayments and deductibles; 2) unjust enrichment and disgorgement "if the Agreement does not apply" to Wellmark's failure to pay interest and withholding a portion of the principal amount; 3) mandatory prejudgment interest under K.S.A. § 16-201 as creditors of Wellmark; and, 4) discretionary prejudgment interest under *Lightcap v. Mobil Oil Corp.*, 221 Kan. 448 (1977). Pursuant to 28 U.S.C. 1446(b)(3), Wellmark again removed the case to this court on the basis of complete preemption under ERISA, and plaintiffs again move to remand.

This case has thus come full circle without any resolution of its merits. But the posture and contours of the case are different than when this Court previously examined it. Whereas the Court had only a bare bones pleading to examine last time, it now has the benefit of a record which includes the settlement agreement, the summary judgment briefings, transcripts of previous hearings, and the amended petition. Unlike the original petition which sought only interest, the amended petition seeks $5,263.10 in alleged benefits (the deductible and co-insurance amounts), and seeks relief outside the scope of settlement – unjust enrichment.

**Propriety of Second Removal**

The removal statute provides that

> [i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . .

28 U.S.C. §1446(b)(3). Because Wellmark removed this case within 30 days after the filing of plaintiff's amended petition, which created a basis for removal, removal is both timely and permissible. *See e.g.*, *O'Bryan v. Chandler*, 496 F.2d 403, 409 (10th Cir. 1974).

One sidenote - The record reflects that both parties have, at times, alleged that the law of the case doctrine makes jurisdiction proper (or improper) in federal court. "Generally, the 'law of the case' doctrine dictates that prior judicial decisions on rules of law govern the same issues in subsequent phases of the same case." *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1224 (10th Cir. 2007). Since no law has been established in this case regarding the new issues raised in the amended petition, the law of the case doctrine does not assist in resolving the present motion.

## II. Discussion

The jurisdiction of the federal courts is limited by Article III of the Constitution and by statutes passed by Congress. *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1220 (10th Cir. 2011). "A case that is filed in state court may be removed from state to federal court at the election of the defendant, but only if it is one 'of which the district courts of the United States have original jurisdiction,' which is to say if federal subject-matter

jurisdiction would exist over the claim." *Id.* (quoting 28 U.S.C. § 1441(a)). Typically, federal question jurisdiction turns on the "well-pleaded complaint" rule, such that the federal question must appear on the face of the plaintiff's complaint; "that the defendant possesses a federal defense is not sufficient to invoke federal question jurisdiction. *Id.* (citing *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1154 (10th Cir. 2004)). In other words, if the plaintiff files in a state court pleading only state-law causes of action, the case is generally not removable to federal court based on federal question jurisdiction. *Id.* (citations omitted).

### A. ERISA Preemption, Generally

The Supreme Court, however, has recognized an exception to the well-pleaded complaint rule for a narrow category of state-law claims that can independently support federal jurisdiction and removal. *Id.* at 1220-21 (citing *Felix*, 387 F.3d at 1154). These claims are "completely preempted" because "they fall within the scope of federal statutes intended by Congress completely to displace all state law on the given issue and comprehensively to regulate the area." *Id.* at 1221 (quoting *Felix*, 387 F.3d at 1154–55). Complete preemption makes a state-law claim "purely a creature of federal law," and thus removable from state to federal court from the outset. *Id.* (citations and quotations omitted). "The Supreme Court has recognized only a few federal statutes that so pervasively regulate their respective areas that they have complete preemptive force; ERISA is one." *Id.* (citing *Metro. Life*

*Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987)). Section 502(a) of ERISA authorizes civil actions "(1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id*. (quoting ERISA § 502(a)(1)(B)).

Under *Taylor*, a state-law suit that falls within the scope of this section may be removed to federal court via complete preemption. *Id*. A state-law suit falls within § 502(a) and may be removed to federal court if the "claim is for benefits due or claimed under an ERISA-regulated plan, or to enforce or clarify rights under a plan, and no legal duty independent of ERISA is implicated in the claim." *Id*. (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)). Plaintiffs contend that their claims cannot be recharacterized as § 502(a) claims because those claims arise solely from the parties' settlement agreement—an agreement which, in any event, contains an integration clause making the agreement supersede the ERISA plan documents upon which an ERISA claim must be predicated. Wellmark, on the other hand, contends that plaintiffs' amended petition places in dispute Wellmark's interpretation and application of the Plan's co-insurance and deductible provisions and specifically seeks rights and remedies outside the parties' settlement—rights and remedies which necessarily are dependent on and related to plaintiffs' status as Plan participants and beneficiaries.

8

**B. Integration Clause**

The court first considers plaintiffs' threshold argument that the integration clause of the parties' settlement agreement renders the Plan documents irrelevant to this dispute. The integration clause states: "[t]his Agreement sets forth the entire agreement between the parties hereto, and fully supersedes any and all prior agreements or understandings between the parties pertaining to the subject matter hereof."

The court is not persuaded that the parties' settlement agreement supersedes the Plan documents. The paragraph preceding the integration clause states that the "Agreement . . . shall in all respects be interpreted, enforced and governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq., where applicable." Moreover, the parties' agreement defines and references the Plan documents in the opening recitals and, importantly, the "Claims" purportedly resolved in the agreement are defined in the agreement only by claim number or by specific reference to the Plan documents. The sole definition of "Claims" is included in the Recitals, as follows:

> Wellmark processed claim numbers 03071957020202, 03071957020302, 01072322010002, and 01073045260000 for ... services and treatment received by ... an eligible dependent under the Plan . . . and the Sharps incurred additional expenses through December 31, 2008, which the Sharps allege are covered under the Plan Documents (collectively, the "Claims") (and as further described in the Lawsuit defined below)

Dk. 5, Exh. 3, p. 115.

Although the parties' settlement agreement "does, in a sense, represent the entire agreement between the parties, that 'entire agreement' incorporates and includes the terms of the referenced ERISA-governed Plan." *See Sargent v. Verizon Servs. Corp.*, 2010 WL 610948, at *8 (D.N.H. Feb. 22, 2010) (rejecting argument that integration clause in separation agreement superseded Plan documents such that state law claims did not relate to the Plan; separation agreement incorporated by reference terms of the Plan); *accord Anco v. Acco Brands*, 2010 WL 3034732, at * 2 (N.D. Ill. Aug. 3, 2010) (rejecting argument that letter agreement's integration clause "pulls the case out of ERISA" and supersedes plan documents; letter agreement expressly incorporated plan documents and stated that it was governed by ERISA). The integration clause thus does not render the Plan documents irrelevant to this dispute.

### C. Complete Preemption

The court next addresses Wellmark's complete preemption argument. As noted above, Wellmark may properly remove plaintiffs' claims to this court if those claims "are benefits due or claimed under an ERISA-regulated plan, or to enforce or clarify rights under a plan, and no legal duty independent of ERISA is implicated in the claim." *Taylor*, 481 U.S. at 67.

### 1. Unpaid Principal

The court begins with plaintiffs' claims for unpaid principal in Counts I and II of their amended petition. Plaintiffs contend these claims cannot be

10

characterized as § 502(a) claims because the claims implicate a legal duty independent of the Plan. Plaintiffs contend that their claims for unpaid principal are not viable under ERISA because the Plan arguably permits Wellmark to withhold the co-insurance and deductible amounts from the benefit amount paid. According to plaintiffs, only the settlement agreement creates a duty on Wellmark's part to pay the full benefit amount to plaintiffs regardless of the Plan's co-insurance and deductible provisions.

The court is not persuaded by plaintiffs' argument. Significantly, the settlement agreement does not address co-insurance or deductible amounts and does not set forth a specific amount owed by Wellmark to plaintiffs. The agreement states only that plaintiffs submitted four "Claims" for benefits which they alleged "are covered under the Plan documents . . . and such Claims were denied by Wellmark based on a medical necessity determination by Wellmark in accordance with Wellmark's Medical Policy." The agreement further provides that Wellmark agrees to pay the "Claims" submitted by plaintiffs if an independent medical examiner overturns Wellmark's adverse medical necessity determination. The "Claims" themselves are not attached to the agreement and they are identified in the agreement only by claim number. In addition, the decision by the independent reviewer does not mention the amounts of the Claims or otherwise direct the payment of any money to plaintiffs; it simply explains the rationale for the reviewer's conclusion that the benefits sought by plaintiffs were covered by the Plan.

11

In isolation, then, the settlement agreement does not address the principal amount to which plaintiffs may be entitled. The settlement agreement expressly contemplates that the "Claims" are "covered under the Plan documents" and the independent reviewer concluded that the Claims were covered by the Plan. It is thus not possible to determine without reference to the Plan the monetary value of the "Claims" submitted by plaintiffs under the Plan. The settlement agreement does not purport to create rights and duties independent of those created by the Plan; it simply requires Wellmark to fulfill its duties under the Plan. Because the Plan documents govern the benefits to which plaintiffs are entitled per the settlement agreement, plaintiffs' claims for unpaid principal require the court to look to the terms of the Plan to determine whether the settlement agreement was breached or whether Wellmark was unjustly enriched when it withheld such amounts. These claims are thus preempted by ERISA. *See Wilcott v. Matlack, Inc.*, 64 F.3d 1458, 1462 (10th Cir. 1995) (employee may rely on state law to redress breach of contract notwithstanding presence of ERISA plan if the factual basis of the suit is independent of the rights and duties created by the Plan); *Pacificare of Okla., Inc. v. Burrage*, 59 F.3d 151, 154 (10th Cir. 1995) (claims regarding amount of health benefits relate to an ERISA plan and are therefore preempted); *Sargent*, 2010 WL 610948, at *7-8 (state law breach of contract claim preempted by ERISA where settlement agreement promised benefits to

12

plaintiff with reference to an ERISA-governed Plan); *Anco*, 2010 WL 3034732, at *2 (state law breach of contract claim preempted by ERISA where benefits provided in settlement agreement were nonetheless governed by Plan). *Cf, National Elevator Indus., Inc. v. Calhoon*, 957 F.2d 1555, 1558-59 (10th Cir.), *cert. denied*, 506 U.S. 953, (1992) (laws that provide rules for the calculation of the amount of benefits to be paid under ERISA plans are preempted, as are laws and common-law rules that provide remedies for misconduct growing out of the administration of an ERISA plan.)

### 2. Prejudgment Interest

The Court reaches the same result as to plaintiff's claims for mandatory and discretionary prejudgment interest. No prejudgment interest can be owed absent a determination that Wellmark breached the settlement agreement or that Wellmark was unjustly enriched by delaying ERISA benefit payments; those determinations, in turn, cannot be made independently of the ERISA Plan, as the Court found above. The Settlement Agreement does not arguably create a right to interest independent of the Plan. Thus all of plaintiff's claims for prejudgment interest, regardless of the legal theory in which they are couched, are dependent upon the Plan to some extent and are preempted. The Court refers the parties to the authorities in its previous examination of this issue in this case, *Sharp v.*

*Wellmark, Inc.*, 744 F.Supp.2d 1191 (D.Kan. 2010), which remain relevant to the interest claims in plaintiff's amended petition.

### III. Fees and Expenses

Plaintiffs seek fees and expenses under 28 USC § 1447(c) for Wellmark's "wrongful" removal. Because removal was proper, this request shall be denied.

### IV. Prompt Resolution on Merits

Because of the protracted extent and circuitous nature of this case's procedural history, motions to transfer or dismiss the case are not encouraged. The Magistrate is encouraged to expedite any necessary discovery and dispositive motions so that this Court may resolve the substantive issues in this case with as little delay as possible.

IT IS THEREFORE ORDERED that plaintiff's motion to remand (Dk. 8) is denied.

Dated this 28th day of November, 2012, at Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge